## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARISTOTLE INTERNATIONAL, INC., )<br>205 Pennsylvania Avenue, SE )<br>Washington, D.C. 20003 )<br> )<br>　　　　　　　　　　Plaintiff, )<br>　　　v. )<br> )<br>MICAH WILLBRAND, )<br>6 Treyburn Court )<br>Greer, South Carolina 29650 )<br> ) Civil Action No. _____<br>　　　　　and )<br> )<br>GB GROUP PLC )<br>Winster House, Herons Way )<br>Chester Business Park )<br>Chester, CH4 9GB )<br>United Kingdom )<br> )<br>　　　　　　　　　　Defendants. )<br>　　　　　　　　　　　　　　)| |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1441, Defendants Micah

Willbrand ("Mr. Willbrand") and GB Group PLC ("GB Group") (collectively "Defendants")

remove to this Court the District of Columbia action described in paragraph 1 below.

### THE REMOVED ACTION

1.　　　　The removed action is a civil action filed on or about July 28, 2006, in the

Superior Court of the District of Columbia, having been assigned Civil Action No. 0005779-06,

and styled Aristotle International, Inc.  v. Micah Willbrand and GB Group PLC.  An amended

complaint was filed on or about August 24, 2006.

## PAPERS FROM REMOVED ACTION

2.      28 U.S.C. § 1446(a) requires that copies of all process, pleadings, and orders

served upon Defendants in the removed case are included with the Notice of Removal.  As

described in paragraph 3 below, Defendants' counsel accepted service on September 19, 2006

(the day before filing for removal) and had not yet received the amended complaint.  For the

convenience of the Court, Defendants attach as Exhibit A the Amended Complaint filed in the

Superior Court of the District of Columbia.  Neither Defendant has filed any responsive pleading

in the Superior Court of the District of Columbia.[1]

## THE REMOVAL IS TIMELY

3.      On September 19, 2006, Defendants' counsel accepted service on behalf of Mr.

Willbrand and GB Group.  This notice of removal is timely, as Defendants have until thirty (30)

days after formal service to file such a notice.  See 28 U.S.C. § 1446(b) (2000); Murphy Bros.,

Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999); Holmes v. PHI Serv. Co., 437 F. Supp.

2d 110 (D.D.C. 2006); Kopff v. World Research Group, LLC, 298 F. Supp. 2d 50 (D.D.C. 2003).

## THE VENUE REQUIREMENT FOR REMOVAL IS MET

4.      Venue of this removal is proper under 28 U.S.C. § 1441(a) because this Court is

the United States District Court for the district and division corresponding to the place where the

District of Columbia action was pending.

---

[1] Concurrent with filing a notice to the Superior Court of the notice of removal to this Court,
Defendants' counsel filed a notice of appearance, which is attached as Exhibit B hereto.  This is
a special appearance for the limited purpose of contesting jurisdiction, and does not constitute
Defendants' submission to the jurisdiction of the Superior Court.  Similarly, by filing this Notice
of Removal, Defendants reserve all their rights and defenses, including personal jurisdiction and
venue.  See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1344
(3d ed.) ("[A]n appearance in state court prior to removing a case to federal court does not waive
objections that might have been raised in state court and that are still available under the federal
rules." (citing cases)).

## DIVERSITY OF CITIZENSHIP EXISTS

5.      This is a civil action that falls under the Court's original jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) and is one that may be removed to this Court based on diversity of citizenship under 28 U.S.C. §§ 1441 and 1446.

6.      Plaintiff alleges in its Amended Complaint that it is incorporated in Delaware and has its principal of business in the District of Columbia.  See Amended Complaint ¶ 5.

7.      Defendant Mr. Willbrand is not, and was not at the time the action was commenced, a citizen of either Delaware or the District of Columbia.  See id. ¶ 6.  Plaintiff alleges that Mr. Willbrand resides in South Carolina.  Id.

8.      Defendant GB Group is not, and was not at the time the action was commenced, a citizen of either Delaware or the District of Columbia.  See id. ¶ 7.  Plaintiff alleges that GB Group is a United Kingdom company.  Id.  GB Group is a corporation organized and existing under the laws of England and Wales, with its principal place of business and headquarters in England.  See JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd., 536 U.S. 88, 91 (2002) ("A corporation of a foreign State is, for purposes of jurisdiction in the courts of the United States, to be deemed, constructively, a citizen or subject of such State." (quotations omitted)).

9.      Accordingly, there is complete diversity between Plaintiff and Defendants under 28 U.S.C. § 1332.

## THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED

10.     Plaintiff's allegations demonstrate that the amount in controversy exceeds the sum or value of $75,000, excluding interest and costs.  Plaintiff seeks a host of damages, claiming

misappropriation of trade secrets, tortious interference with contract, and breach of contract. See, e.g., Amended Complaint ¶ 52 (alleging "significant actual damages"); ¶ 82 (same).

11.     Plaintiff alleges that the "amount in controversy exceeds . . . $5,000." Id. ¶ 2.  In fact, Plaintiff's allegations make clear that the amount in controversy exceeds $75,000. Specifically, Plaintiff claims that an amendment to a contract "was intended by Defendants to avoid the necessity of the 90,000 pound UK payment in April 2006." Id. ¶ 32.  Ninety-thousand (90,000) British pounds is, as of the date of removal, approximately $170,000. See Kopff v. World Research Group, LLC, 298 F. Supp. 2d 50, 57 (D.D.C. 2003) ("It is established that the time for assessing jurisdictional amount is at the time of removal."); http://money.cnn.com/data/currencies (on September 20, 2006, providing exchange rate of approximately 1 British pound to $1.89).[2]  This alone establishes that the amount in controversy exceeds $75,000.

12.     In addition to those allegations, Plaintiff asserts damages based on misappropriation of trade secrets, claiming that "[g]iven the competitive nature of the authentication industry and the positions of [Plaintiff] and [Defendant GB Group] within the industry, GB will derive economic value from" GB Group's alleged use of Plaintiff's proprietary information.  Amended Complaint ¶¶ 46-47.  Plaintiff seeks damages of actual loss plus unjust enrichment under D.C. Code § 36-403(a).  Id. ¶¶ 60-61, 67-68; id., Prayer for Relief ¶ 6.  D.C. Code § 36-403(a) provides that "damages caused by misappropriation may be measured by the imposition of liability for a reasonable royalty . . . [on the] misappropriator."

---

[2] Courts may take judicial notice of currency exchange rates.  See Official Comm. of Unsecured Creditors of R.M.L., Inc. v. Conceria Sabrina S.P.A. (In re R.M.L., Inc.), 195 B.R. 602, 623 (Bankr. M.D. Pa. 1996), aff'd mem., 127 F.3d 1096 (3d Cir. 1997).

13.     In addition, Plaintiff alleges breach of an employment contract and tortious interference with that contract, seeking (among other things) the "return of [Mr.] Willbrand's commission." Amended Complaint, Prayer for Relief ¶ 10.

14.     In addition, Plaintiff seeks attorneys fees pursuant to D.C. Code § 36-404(3). <u>See</u> <u>id.</u> ¶ 8. Attorneys' fees are considered in determining the amount in controversy when a plaintiff is allowed by statute to seek such fees. <u>See</u> <u>Brand v. Gov't Employees Ins. Co.</u>, No. Civ.A. 04-01133, 2005 WL 3201322, at *6 (D.D.C. Nov. 29, 2005).

15.     In addition, Plaintiff seeks exemplary and punitive damages, jointly and severally, against each defendant. <u>See</u> Amended Complaint, Prayer for Relief ¶ 7 (exemplary damages pursuant to D.C. Code § 36-403(b)); <u>id.</u> ¶ 11. Where state law allows a plaintiff to seek punitive damages, such damages are considered in determining the amount in controversy. <u>See</u> <u>Bell v. Preferred Life Assurance Soc'y</u>, 320 U.S. 238, 240 (1943); <u>Nwachukwu v. Karl</u>, 223 F.Supp.2d 60, 66 (D.D.C. 2002).

16.     The totality of these factors establishes that the amount in controversy exceeds the $75,000 jurisdictional requirement.

17.     Thus, the District of Columbia action may be removed to this Court by Defendants in accordance with the provisions of 28 U.S.C. § 1441(a) because (i) this action is a civil action pending within the jurisdiction of the United States District Court for the District of Columbia; (ii) this action is between citizens of different states; and (iii) the amount in controversy exceeds $75,000, exclusive of interest and costs.

## FILING OF REMOVAL PAPERS

18.     Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this action has been given simultaneously to Plaintiff's counsel, <u>see</u> Exhibit C, and a notice of filing of notice of

removal is simultaneously being filed with the Superior Court of the District of Columbia, <u>see</u> Exhibit D.

**WHEREFORE**, Defendants hereby remove the above-captioned action from the Superior Court of the District of Columbia, and request that further proceedings be conducted in this Court as provided by law.

Respectfully Submitted,

WILLIAMS & CONNOLLY LLP

Bruce R. Genderson (D.C. Bar No. 961367)
Vidya Atre Mirmira (D.C. Bar No. 477757)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)

Dated: September 20, 2006

*Counsel for Defendants Micah Willbrand
and GB Group PLC.*

# EXHIBIT A



**IN THE SUPERIOR COURT**
**OF THE DISTRICT OF COLUMBIA**
**Civil Division**

FILED
CIVIL ACTIONS BRANCH
AUG 24 2006
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

ARISTOTLE INTERNATIONAL, INC.
205 Pennsylvania Avenue, SE
Washington, D.C. 20003

        Plaintiff,

v.

MICAH WILLBRAND
6 Treyburn Court
Greer, South Carolina 29650

and

GB GROUP PLC
Winster House, Herons Way
Chester Business Park
Chester, CH4 9GB
United Kingdom
SERVE:
   Chief Executive Officer
   Winster House, Herons Way
   Chester Business Park
   Chester, CH4 9GB
   United Kingdom

        Defendants.

Civil Case No. 2006 CA 005779B
Calendar 10 – Judge Broderick
Next Event: Initial Conference
        10/27/06 @ 9:30 a.m.

## AMENDED COMPLAINT

Plaintiff Aristotle International, Inc. ("Aristotle"), by counsel, files this amended

complaint and alleges as follows:

dc-457201 v4
            1

Case: 2006 CA 005779 B
Doc: CIVAC

## JURISDICTION

1.      This is a civil action seeking injunctive relief and damages for breach of contract, disclosure of trade secrets, and tortious interference with contract.

2.      This court has jurisdiction pursuant to District of Columbia Code §11-921.  The amount in controversy exceeds, exclusive of interest and costs, the sum of $5,000.00.

3.      Defendant Micah Willbrand ("Willbrand") has substantial contacts with this jurisdiction with respect to matters relating to the subject matter of this litigation.

4.      Willbrand is an agent of Defendant GB Group ("GB") with respect to the subject matter of this lawsuit.

## PARTIES

5.      Plaintiff Aristotle is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the District of Columbia.  Aristotle provides fraud prevention, child protection, authentication and age and identity verification services to businesses online, under trade names including "Kid Sheriff", "VerifyME" and "Aristotle's Integrity" (together, "Integrity Services") since the year 2000.

6.      Defendant Willbrand is an individual residing in South Carolina.

7.      Defendant GB Group is a United Kingdom company.

## BACKGROUND

8.      In November 1999, Defendant Willbrand entered a written employment agreement with plaintiff ("Willbrand Employment Agreement").

9.      The Willbrand Employment Agreement required Willbrand not to compete with Plaintiff for one year after termination of his employment in any business involving "operating, creating, designing, programming, marketing, or selling… databases derived from registered

1565963 SWINGLERM 08/28/2006 9:35:11 AM

voter lists, whether for your own business or for any other person or entity, including, specifically, but not limited to, any competitor, client, or former client of the Company...."

10.    A key component of Integrity Services involves the operation and marketing of databases derived from registered voter lists.

11.    The Willbrand Employment Agreement required Willbrand to abide by a written Employee Proprietary Information and Inventions Agreement ("Proprietary Information Agreement"), attached as an Exhibit to the Willbrand Employment Agreement.

12.    The Proprietary Information Agreement requires Willbrand to "at all times during [his] employment and thereafter, hold in strictest confidence and not disclose, use, lecture upon, or publish any of [Aristotle's] Proprietary Information...."

13.    The Proprietary Information Agreement defines Proprietary Information as "any and all confidential and/or proprietary knowledge, data, or information of [Aristotle]. By way of illustration but not limitation, 'Proprietary Information' includes (a) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques...and (b) information regarding plans for research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers; and (c) information regarding the skills and compensation of other employees of [Aristotle]."

14.    Willbrand served as a Vice President of Authentication for Plaintiff and was a former key employee.

15.    Willbrand visited the D.C. office of Plaintiff and stayed in D.C. on many occasions during his employment by Plaintiff from November 1999 until February 2006.

1565963 SWINGLERM 08/28/2006 9:35:11 AM

16.     Willbrand received his paychecks from the D.C. office of Aristotle.

17.     GB Group offers various data solutions providing the capture, enhancement and maintenance of customer data, including offering data verification services for online sites.

18.     GB has utilized Plaintiff's data for some of its data verification services pursuant to a contract with Plaintiff dated October 20, 2004 ("GB-Aristotle Agreement.")

19.     Willbrand executed the GB-Aristotle Agreement in his capacity as a Vice President of Aristotle.

20.     Willbrand was entrusted with management of Aristotle's relationship with GB. Plaintiff relied on Willbrand's judgment and recommendations with respect to the GB-Aristotle Agreement and relationship.

21.     Under the GB-Aristotle Agreement, a testing period was to commence after the effective date of the contract.

22.     Following the testing period, if the Service Commencement Date occurred within 18 months of the effective date of the GB-Aristotle Agreement, then Aristotle was to receive payment from GB of 90,000 Pounds UK.

23.     The GB-Aristotle Agreement was to expire by its own terms if such Service Commencement Date did not occur by April 20, 2006, eighteen months after the effective date.

24.     In October 2005, Willbrand presented Plaintiff's Chief Executive Officer, John Phillips, with a proposal to extend GB's testing period under the GB-Aristotle Agreement, such that GB would be allowed up to one year to test US data, in exchange for 10,000 pounds UK ("Amendment")

25.     Willbrand's proposal to Phillips stated that if such test was successful then GB "will turn it on."

26.     Mr. Phillips relied on Willbrand's advice and gave approval to the proposal.

27.     In early November 2005, Willbrand attended a business conference in Nice, France, where GB Group was also present.

28.     At the end of November 2005, Willbrand, acting as an officer of Aristotle, executed a 1-page amendment he had drafted to the GB-Aristotle Agreement.

29.     Such Amendment did not contain the language Phillips had approved concerning if such test was successful then GB would "turn it on."

30.     To the contrary, the Amendment signed by Willbrand contained a provision stating that even "upon acceptable performance from Aristotle.... [GB was] under no obligation to contract further with Aristotle."

31.     Willbrand was entrusted with management of this matter, and did not show the Amendment to Phillips or Plaintiff's General Counsel prior to executing the Amendment.

32.     Upon information and belief, the Amendment was intended by Defendants to avoid the necessity of the 90,000 pound UK payment in April 2006, and to provide GB with an inexpensive "bridge" that allowed it to continue serving its clients while GB (including Willbrand later) replaced Aristotle.

33.     Six weeks after executing the Amendment on behalf of Aristotle, and having not shown it to Phillips, and having not told Phillips that the Amendment was fundamentally different from what Phillips had approved on Willbrand's advice, Willbrand gave Aristotle two-weeks notice of his resignation.

34.     It was not until the day Willbrand gave his two-weeks notice on January 20, 2006 that he forwarded a copy of the Amendment to Phillips, and even then Willbrand did not draw

1565963 SWINGLERM 08/28/2006 9:35:11 AM

attention to the absence of the key provision concerning the parties' obligations upon successful conclusion of testing.

35.     Upon giving his two-weeks notice, Willbrand stated that he was leaving to join GB Group.

36.     Willbrand told Aristotle that GB had a variety of client services, and that he would be performing various different functions for GB.

37.     Willbrand stated that he would not be competing with Aristotle, and would not use or disclose Aristotle's confidential information.

38.     Before leaving Aristotle, Willbrand took his commission for the payment made by GB in December 2005 under the Amendment.

39.     On February 1, 2006, two days before Willbrand's last day, Phillips asked Willbrand "where do you see this [GB-Aristotle] relationship going?"

40.     Willbrand wrote to Phillips the same day, responding "I see it continuing to grow."

41.     Willbrand wrote further that the "underlying philosophy" of the two companies was the same with respect to GB's using "already gathered data, which is why the [Aristotle] relationship is important for them moving forward."

42.     Willbrand concluded these assurances by stating, "Ultimately it is a symbiotic relationship where both parties are going to do phenomenal things and make a lot of money in the process."

43.     Upon information and belief, contrary to Willbrand's assurances prior to leaving Aristotle, within weeks GB was using Willbrand to coordinate, oversee, or otherwise play a

significant role in replacing Aristotle as a data supplier of GB, while using his knowledge of Aristotle's proprietary information to do so.

44.     On May 2, 2006, GB issued a press release that included the following: "GB also announces today the appointment of Micah Willbrand to the post of International Development Manager. For the previous five years, Micah worked in the USA as Vice President of Authentication Solutions at Aristotle Inc., a leading provider of age verification solutions to the USA, European and Asia Pacific markets."

45.     In May 2006, GB's Chief Executive Richard Law, told Phillips in person that Willbrand was performing an important role in lining up companies and sources of data for a "tendering process", whereunder GB would seek a replacement for Aristotle.

46.     Upon information and belief, GB has begun to use proprietary Aristotle techniques in its verification offerings.

47.     Given the competitive nature of the authentication industry and the positions of Aristotle and GB within the industry, GB will derive economic value from the Proprietary Information.

## COUNT I
## BREACH OF CONTRACT --WILLBRAND

48.     Aristotle realleges and incorporates by reference all allegations set forth above.

59.     By his conduct in competing with Aristotle, Willbrand has breached the Willbrand Employment Agreement.

50.     By his conduct in disclosing Aristotle's proprietary information to GB, Willbrand has breached the Willbrand Employment Agreement.

1565963 SWINGLERM 08/28/2006 9:35:11 AM

51.     By his conduct in advising acceptance of, and personally executing, the Amendment without full disclosure to Aristotle that the Amendment did not contain the key terms that Phillips had approved when Willbrand first proposed the extension, Willbrand has breached the Willbrand Employment Agreement.

52.     Aristotle has been and will continue to suffer significant actual damages as a result of Willbrand's breaches.

53.     The use and disclosure of Aristotle's proprietary information by Defendants causes and will continue to cause certain injuries that are irreparable to Aristotle, and for which there is no adequate remedy at law.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS -- WILLBRAND
### (Violation of D.C. Code § 36-401 *et seq.*)

54.     Aristotle realleges and incorporates by reference all allegations set forth above.

55.     As the Aristotle employee who had primary responsibility for the GB relationship and the manner in which Aristotle performed services under the GB-Aristotle Agreement, Willbrand had access to all the aspects of the development, function, application and marketability of Integrity.

56.     The Integrity service is a formula, pattern, compilation, program, device, method, technique, or process that derives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by proper means by, another who can obtain economic value from its disclosure or use and it is the subject of reasonable efforts to maintain its secrecy and constitutes a trade secret under D.C. Code Ann. § 36-401(4).

57.     Willbrand knew, or had reason to know, that the Aristotle's proprietary information concerning the Integrity service was a trade secret of Aristotle, and Willbrand

acquired knowledge of such proprietary information under circumstances giving rise to a duty to maintain its secrecy.

58.     Willbrand's use of and disclosure to GB of Aristotle's trade secrets were without Aristotle's consent, either express or implied, and is an actual or threatened misappropriation of Aristotle's trade secrets.

59.     Use of Aristotle's trade secrets by Defendants has caused and will continue to cause irreparable injury to Aristotle, for which there is no adequate remedy at law.

60.     Willbrand's misappropriation of these trade secrets has caused Aristotle damages.

61.     Willbrand is or may be unjustly enriched by the proceeds received from the misappropriation of Aristotle's trade secrets, which are not reflected in the actual loss caused to Aristotle.

62.     Willbrand has engaged and is engaging in the misappropriation of Aristotle's trade secrets willfully, fraudulently, and maliciously.

## COUNT III
### MISAPPROPRIATION OF TRADE SECRETS – GB GROUP
### (Violation of D.C. Code § 36-401 *et seq.*)

63.     Aristotle realleges and incorporates by reference all allegations set forth above.

64.     GB knew, or had reason to know, that the Aristotle's proprietary information concerning the Integrity service was a trade secret of Aristotle, and that Willbrand acquired knowledge of such proprietary information under circumstances giving rise to a duty to maintain its secrecy.

65.     GB knew, or had reason to know, that Willbrand's use and disclosure to GB of Aristotle's trade secrets was without Aristotle's consent, either express or implied, and is an actual or threatened misappropriation of Aristotle's trade secrets.

66.     Use of Aristotle's trade secrets by GB has caused and will continue to cause irreparable injury to Aristotle, for which there is no adequate remedy at law.

67.     GB's misappropriation of these trade secrets has caused Aristotle damages.

68.     GB is or may be unjustly enriched by the proceeds received from the misappropriation of Aristotle's trade secrets, which are not reflected in the actual loss caused to Aristotle.

69.     GB has engaged and is engaging in the misappropriation of Aristotle's trade secrets willfully, fraudulently, and maliciously.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACT -- GB GROUP

70.     Aristotle realleges and incorporates by reference all allegations set forth above.

71.     Aristotle had a legal employment contract with Willbrand.

72.     Upon information and belief, GB had knowledge of the contract between Aristotle and Willbrand.

73.     Defendants intentionally procured Willbrand's breach of his contract with Aristotle.

74.     As a direct and proximate result of the conduct of Defendants as alleged above, Plaintiff has suffered damages in an amount to be proven at trial.

75.     Defendants have engaged in these activities recklessly, wantonly, willfully, and maliciously.

## COUNT V

## BREACH OF CONTRACT – GB GROUP

76.     Aristotle realleges and reincorporates by reference all allegations set forth above.

77.     The GB-Aristotle Agreement provides that Aristotle has certain competitive bidding priorities and exclusivity rights.

78.     Law told Phillips that GB had begun to collect or had collected Australian data.

79.     Law told Phillips that GB was offering an algorithmic solution in other countries.

80.     Law told Phillips that GB was building Scandinavian data on GB's own, for which GB had been paid money by Neteller.

81.     By its conduct in collecting data on its own and offering algorithmic solutions without complying with the terms of the GB- Aristotle Agreement, GB has breached the GB-Aristotle Agreement.

82.     Aristotle has been and will continue to suffer significant actual damages as a result of GB's breaches.

83.     The use by GB of algorithms and data from other countries in breach of the GB-Aristotle Agreement causes and will continue to cause certain injuries that are irreparable to Aristotle, and for which there is no adequate remedy at law.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Aristotle International, Inc., prays for judgment against Defendants as follows:

1.      For injunctive relief prohibiting Willbrand from violating the Willbrand Employment Agreement;

1565963 SWINGLERM 08/28/2006 9:35:11 AM

2.      For a court order, impounding all proprietary information of Plaintiff, including any and all notes, design, data acquisition and development documents, held by Defendants and return of all such copies to Aristotle;

3.      For judgment, jointly and severally, for the appropriate damages;

4.      For Plaintiff's cost of suit herein, including reasonable attorneys' fees;

5.      For injunctive relief prohibiting Defendants from using any of Aristotle's trade secrets, pursuant to D.C. Code § 36-402(a);

6.      For judgment, jointly and severally, in an amount equal to Aristotle's actual loss caused by the trade secret misappropriation and the unjust enrichment caused by the misappropriation not taken into account when computing Aristotle's actual loss, an amount which is presently not ascertainable, pursuant to D.C. Code § 36-403(a);

7.      For exemplary damages, jointly and severally, pursuant to D.C. Code § 36-403(b), in an amount to be determined by the trier of fact;

8.      For Plaintiff's costs of suit herein, including attorney's fees pursuant to D.C. Code § 36-404(3);

9.      For judgment, jointly and severally, in an amount equal to the damage caused by Defendant GB's tortious interference with Aristotle's contractual relationships with Defendant Willbrand;

10.     For return of Willbrand's commission on the Amendment;

11.     For punitive damages, jointly and severally, in an amount to be determined by the trier of fact;

12.     For judgment in an amount equal to the damage caused by GB's breach of the GB-Aristotle Agreement;

13.   For injunctive relief, prohibiting GB from use of algorithms and data from other

countries in breach of the GB-Aristotle Agreement;

14.   For Plaintiff's cost of suit herein, including reasonable attorneys fees; and

15.   For such other relief as the Court deems just and proper.


Respectfully submitted,

Blair Richardson #385482
7440 Chummley Court
Falls Church, VA 22043
(703) 846-0078
Attorney for Aristotle International, Inc.


## JURY TRIAL DEMAND

Aristotle respectfully demands a jury trial on all issues triable by right before a jury.


Blair Richardson

dc-457201 v4                    13

# EXHIBIT B

## IN THE SUPERIOR COURT FOR
## THE DISTRICT OF COLUMBIA

ARISTOTLE INTERNATIONAL, INC.,          )
                                        )
                    Plaintiff,          )
                                        )          Civil Action No. 06-0005779
          v.                            )          Judge Patricia Broderick
                                        )
MICAH WILLBRAND,                        )
                                        )          Next Event:  October 27, 2006
          and                           )                      Initial Conference  9:30 a.m.
                                        )
GB GROUP PLC                            )
                                        )
                    Defendants.         )
_____)

### NOTICES OF APPEARANCE

        To the Clerk of this Court and all parties of record, pursuant to Rule 101(b)(1) of

the District of Columbia Superior Court Rules of Civil Procedure, please take notice that Bruce

R. Genderson and Vidya Atre Mirmira of the law firm of Williams & Connolly LLP hereby file

their appearance as counsel of record for Defendants Micah Willbrand and GB Group PLC in the

above-captioned matter.

        This is a special appearance only for the limited purpose of contesting

jurisdiction, and does not constitute Defendants' submission to the jurisdiction of this Court.


                                   Respectfully Submitted,

                                   WILLIAMS & CONNOLLY LLP

                                   *Vidya Atre Mirmira*

                                   Bruce R. Genderson (D.C. Bar No. 961367)
                                   Vidya Atre Mirmira (D.C. Bar No. 477757)
                                   725 Twelfth Street, N.W.
                                   Washington, D.C. 20005
                                   (202) 434-5000
                                   (202) 434-5029 (fax)

Dated: September 20, 2006          *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, this 20th day of September 2006, a true and correct copy of the foregoing Notices of Appearance was served via electronic mail and via first-class United States mail, postage prepaid, on:

> J. Blair Richardson, Esq.
> 7440 Chummley Court
> Falls Church, VA 22043
>
> *Counsel for Plaintiff*

Vidya Atre Mirmira

# EXHIBIT C

## IN THE SUPERIOR COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ARISTOTLE INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-0005779 |
| v. | ) | Judge Patricia Broderick |
| | ) | |
| MICAH WILLBRAND, | ) | |
| | ) | Next Event:  October 27, 2006 |
| and | ) | Initial Conference  9:30 a.m. |
| | ) | |
| GB GROUP PLC | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE TO ADVERSE PARTY OF FILING OF
## NOTICE OF REMOVAL TO FEDERAL COURT

TO PLAINTIFF Aristotle International, Inc. AND THEIR COUNSEL OF

RECORD:

PLEASE TAKE NOTICE pursuant to 28 U.S.C. § 1446(d) that, on September 20,

2006, a Notice of Removal of this action was filed in the United States District Court for the

District of Columbia.  A copy of the Notice of Removal and its exhibits are attached hereto as

Exhibit A.

Respectfully Submitted,

WILLIAMS & CONNOLLY LLP

*Vidya Atre Mirmira*

Bruce R. Genderson (D.C. Bar No. 961367)
Vidya Atre Mirmira (D.C. Bar No. 477757)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)

Dated: September 20, 2006                    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, this 20th day of September 2006, a true and correct copy of

the foregoing Notice to Adverse Party of Filing of Notice of Removal to Federal Court was

served via electronic mail and via first-class United States mail, postage prepaid, on:

> J. Blair Richardson, Esq.
> 7440 Chummley Court
> Falls Church, VA 22043
>
> *Counsel for Plaintiff*

Vidya Atre Mirmira

# EXHIBIT D

## IN THE SUPERIOR COURT FOR
## THE DISTRICT OF COLUMBIA

ARISTOTLE INTERNATIONAL, INC.,     )
                                              )
                Plaintiff,        )
                                              )     Civil Action No. 06-0005779
          v.                   )     Judge Patricia Broderick
                                              )
MICAH WILLBRAND,              )     Next Event:  October 27, 2006
                                              )               Initial Conference  9:30 a.m.
             and              )
                                              )
GB GROUP PLC                )
                                              )
                 Defendants.     )
                                              )

## NOTICE TO SUPERIOR COURT OF REMOVAL TO FEDERAL COURT

PLEASE TAKE NOTICE that, on September 20, 2006, Defendants Micah Willbrand and GB Group PLC, without waiving any defenses they may have, filed a Notice of Removal of this action to the United States District Court for the District of Columbia.  A copy of the Notice of Removal and its exhibits are attached hereto as Exhibit A.  This notification effects removal pursuant to 28 U.S.C. § 1446(d).

Respectfully Submitted,

WILLIAMS & CONNOLLY LLP

*Vidya Atre Mirmira*

Bruce R. Genderson (D.C. Bar No. 961367)
Vidya Atre Mirmira (D.C. Bar No. 477757)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)

Dated: September 20, 2006            *Counsel for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that, this 20th day of September 2006, a true and correct copy of the foregoing Notice to Superior Court of Removal to Federal Court was served via electronic mail and via first-class United States mail, postage prepaid, on:

> J. Blair Richardson, Esq.
> 7440 Chummley Court
> Falls Church, VA 22043
>
> *Counsel for Plaintiff*

Vidya Atre Mirmira